UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
TARIQ K. BILAL,

                                Plaintiff,

                - against -

WESTCHESTER COMMUNITY COLLEGE, WCC SINGLE
STOP DEPARTMENT in the Gateway Building, CHRISTINA
CARBONE, Single Stop Employee, ELLEN ZENDERMAN,
Single Stop Supervisor, and DEBBIE SANTORA, Single Stop
Employee and Mental Health Physician,

                                Defendants.
-------------------------------------------------------------------------x

**OPINION AND ORDER**

No. 13-CV-3161 (CS)

Appearances:
Tariq K. Bilal
White Plains, New York
*Plaintiff Pro Se*

Christie Lynne Magno D'Alessio
Westchester County Attorney's Office
White Plains, New York
*Counsel for Defendants*

Seibel, J.

       Before the Court is Defendants' Motion to Dismiss the Second Amended Complaint. (Doc. 21.)  For the reasons set forth below, the Motion is GRANTED.

## I. BACKGROUND

       For purposes of the instant Motion, I accept as true the facts, but not the conclusions, as set forth in the Second Amended Complaint ("SAC").  (Doc. 17.)  In addition, I "must interpret the factual allegations of a *pro se* complaint to raise the strongest arguments that they suggest." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks omitted).

1

In 2013, Plaintiff was a student at Westchester Community College ("WCC"). (SAC at 4). In or around May of that year, Plaintiff went to the WCC "Single Stop Department" to obtain assistance in filling out a benefits application. (*Id.* at 3, 5.) The SAC does not describe what the "Single Stop Department" is or what services it offers, except for indicating that it is located in the "Gateway Building." (*Id.* at 1.) When Plaintiff tried to get help filling out the application, Defendant Christina Carbone, a Single Stop employee, refused to help him and instead continued a telephone conversation with her husband. (*Id.* at 5.) At some later time, Plaintiff returned to the Single Stop Department, and began speaking with Tamika Hall, another Single Stop employee. (*Id.* at 3, 5.) While Hall was with Plaintiff, Carbone came into the room and "verbally attacked" Plaintiff. (*Id.* at 3, 5, 8.) Plaintiff informed Carbone that he had a disability and needed assistance filling out applications. (*Id.* at 5.) Carbone continued to verbally attack Plaintiff, and Plaintiff eventually called the police. (*Id.* at 5, 8.)

After this second incident with Carbone, Plaintiff sought out Defendant Ellen Zenderman, a Single Stop supervisor. (*Id.* at 1, 5.) Instead of listening to his complaint about Carbone, however, Zenderman brought Plaintiff to see Defendant Debby Santora, a mental health professional at Single Stop. (*Id.* at 5.) Santora and Plaintiff spoke, but Santora avoided discussing Plaintiff's complaints about Carbone and instead only wanted to talk about other matters. (*Id.*) At one point, Santora stepped out of the room to talk with Zenderman; Plaintiff believes Santora was sharing confidential information with Zenderman. (*Id.*) Zenderman and Santora then "made" Plaintiff sign a statement agreeing not to enter the Gateway Building again. (*Id.*) Following this episode, Santora placed repeated phone calls to Plaintiff in an attempt to get him to sign a mental health records release, which Plaintiff steadfastly refused to sign. (*Id.*)

Plaintiff complained to his WCC counselor about Santora's repeated calls, but the calls continued, and Plaintiff eventually changed his phone number. (*Id.* at 3, 5.)

At some later, unspecified time, Plaintiff was pulled out of class by three unnamed individuals and taken to a "back room" where he was questioned and intimidated. (*Id.* at 6.) These individuals tried to get Plaintiff to sign various forms, threatening him with expulsion from WCC if he did not comply. (*Id.*) Because he did not want to sign any forms, Plaintiff "got up and left." (*Id.*) Plaintiff was then "chased down" by campus security, who told him that he was expelled from the campus. (*Id.*) Plaintiff went to the bus stop to leave the campus and go home, but state troopers arrived and "physically placed their hands on [Plaintiff], tried to handcuff [him], cursed [him] out," and threatened him, and one officer almost ran Plaintiff over with his police vehicle. (*Id.*) Plaintiff claims that there was a crowd of other students watching, some of whom were recording what was happening, and one student directed a racial slur at Plaintiff. (*Id.*) Plaintiff also tried – at some unspecified point in time – to obtain help from the WCC Dean, calling the Dean's office more than a hundred times,[1] emailing repeatedly, and showing up in person, but he never received any assistance. (*Id.* at 3, 7.) Plaintiff alleges that he was a good student with a good reputation, and that all of this conduct constituted discrimination. (*Id.* at 6, 8.)

\*   \*   \*

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed the instant lawsuit on May 9, 2013. (*See* Complaint, (Doc. 2).) Pursuant to 28 U.S.C. § 1915, the Chief Judge screened the Complaint, found it facially insufficient, and directed Plaintiff to submit an Amended Complaint that more clearly and fully laid out his grievances. (*See* Order to Amend dated June 13, 2013,

---

[1] It is not clear whether the reference to a hundred phone calls is intended as fact or hyperbole.

(Doc. 5).) After Defendants submitted a pre-motion letter outlining perceived deficiencies with the Amended Complaint, a pre-motion conference was held at which I directed Plaintiff to submit a Second Amended Complaint that might address Defendants' concerns, at least some of which the Court shared, and that used numbered paragraphs and specified exactly what claims Plaintiff was asserting. (*See* Doc. 11 (Defendants' pre-motion letter dated Oct. 17, 2013); Minute Entry dated Nov. 22, 2013 (pre-motion conference).) Plaintiff thereafter submitted the currently operative Second Amended Complaint, which does not use numbered paragraphs but lists five "claims": (1) emotional distress; (2) false imprisonment; (3) physical assault; (4) denial of help; and (5) discrimination. (SAC at 7-8.) The instant Motion followed.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).[2]

### B. Documents Outside the Complaint

When deciding a motion to dismiss, the Court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). The Court may also consider any documents that are "integral" to the complaint – that is, any documents which were heavily relied on in drafting the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). Plaintiff did not submit a memorandum of law in opposition to Defendants' Motion. Instead, Plaintiff submitted several documents, none of which are appropriate for the Court consider when deciding a motion pursuant to Rule 12(b)(6). Plaintiff has submitted a police report, (Doc. 29 at 2-3), several mental health evaluation reports, (*id.* at 4-21), a series of emails to and from his guidance counselor at WCC, (*id.* at 22-32), and a witness statement from Tamika Hall, (Doc. 27).

---

[2] The Court is surprised to see Defendants citing to the outdated "no set of facts" standard that had its origin in *Conley v. Gibson*, 355 U.S. 41 (1957). (*See* Memorandum of Law in Support of Motion to Dismiss, (Doc. 26), at 2-3.) That standard "earned its retirement" in 2007. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 563 (2007).

These documents are all of a type more appropriately considered at the summary judgment stage, at which time the Court would be evaluating an evidentiary record for substantive sufficiency. At the motion to dismiss stage, however, the Court is evaluating the complaint for facial sufficiency, and none of these documents were attached to, incorporated by reference in, or heavily relied on by the SAC. *See McCarthy*, 482 F.3d at 191; *Chambers*, 282 F.3d at 152-53. I therefore will not consider any of these materials in deciding the instant Motion. In any event, even if I were to consider the documents, they would not alter my conclusion that the SAC must be dismissed as discussed below.[3]

### III. DISCUSSION

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*) (internal quotation marks and emphasis omitted). I conclude, even under this liberal standard, that Plaintiff's complaint fails to state a federal law claim on which relief can be granted. Several of Plaintiff's claims could arguably also be construed as asserting state law causes of action (*e.g.*, intentional and/or negligent infliction of emotional distress, false imprisonment, assault, or discrimination under state law), although not necessarily sufficient ones. As discussed below, however, I decline to exercise supplemental jurisdiction over any state law claims Plaintiff may be asserting.

#### A. Claims I and IV: Emotional Distress and Denial of Help

Plaintiff's first claim alleges that he suffered emotional distress as a result of the conduct of which he complains. (*See* SAC at 7, first unnumbered paragraph.) Whether construed as a

---

[3] Plaintiff has also submitted two informational pamphlets: one regarding the privacy requirements of the Health Insurance Portability and Accountability Act of 1996, (Doc. 32), and one from the Westchester Medical Center entitled "Notice of Privacy Practices," (Doc. 33). Neither was referred to or relied on in the complaint, and I therefore will not consider them, but it would not affect the outcome even if I did.

6

state law cause of action for intentional and/or negligent infliction of emotional distress or merely as a statement of damages with respect to Plaintiff's other claims, this paragraph does not assert a federal law cause of action.

Plaintiff's fourth claim alleges that the Single Stop Department and the WCC Dean denied him "any help." (*Id.* at 7, fourth unnumbered paragraph.)  This allegation is vague and non-specific – it does not identify, for example, what assistance Plaintiff was requesting of the Dean or why that assistance was refused.  The SAC nowhere alleges that either the Single Stop Department or the Dean had any duties or obligations that they failed to meet, nor does it explain how or why any such failure would constitute a violation of federal law.  This paragraph fails to state a federal cause of action on which relief can be granted.

### B. Claims II and III:  False Imprisonment, False Arrest, and Excessive Force

Plaintiff's second claim is for false imprisonment in connection with his removal from class and confinement in a "back room" by three unidentified WCC employees.  (*See id.* at 7, second unnumbered paragraph.)  I construe this claim as asserting a cause of action under 42 U.S.C. § 1983 ("Section 1983") alleging a violation of Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.  Plaintiff's third claim alleges that he was "physically attacked" by state troopers and WCC security guards as he left the campus after being notified that he was expelled.  (*See* SAC at 7, third unnumbered paragraph.)  I also construe this paragraph as asserting a cause of action under Section 1983 alleging a violation of Plaintiff's Fourth Amendment right to be free from the use of excessive force.

To state a claim under Section 1983, a complaint must allege that a defendant (1) deprived the plaintiff of rights secured by the Constitution and laws of the United States, (2) while acting under color of state law.  42 U.S.C. § 1983.  "It is well settled that, in order to

7

establish a defendant's individual liability in a suit brought under [Section] 1983, a plaintiff must show, [among other things], the defendant's personal involvement in the alleged constitutional deprivation." *Grullon*, 720 F.3d at 138; *see Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001). In some situations, a supervisory official can be held liable for the constitutional violations of his or her subordinates. To prevail on a theory of supervisory liability, Plaintiff must show that the supervisory official:

> (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated.

*Iqbal v. Hasty,* 490 F.3d 143, 152 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).[4] The Second Circuit has clarified that the "direct participation" theory of supervisory liability refers to "personal participation by one who has knowledge of the facts that rendered the conduct illegal," and encompasses personal participation that may be considered "indirect," "such as ordering or helping others to do the unlawful acts, rather than doing them him- or herself." *Provost*, 262 F.3d at 155 (footnote omitted).

The three individuals who are alleged to have unlawfully confined Plaintiff are not named as defendants in this case, nor are any of the security guards or state troopers involved in the later physical altercation. Additionally, the SAC contains no facts tending to indicate that Defendants Carbone, Zenderman, or Santora had supervisory authority over any of those

---

[4] In *Iqbal*, the Supreme Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Iqbal*, 556 U.S. at 677. Whether all of the *Colon* avenues to personal involvement survive *Iqbal* remains unsettled. *See Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012). I need not address the issue, however, because Plaintiff does not adequately plead the individual defendants' personal involvement even under *Colon. See Grullon*, 720 F.3d at 139 (noting that *Iqbal* "may have heightened the requirements for . . . personal involvement" but choosing not to reach the question because Plaintiff's complaint was inadequate even under *Colon*).

unidentified individuals, let alone sufficient facts to render plausible any of the above theories of supervisory liability. While I express no opinion on the sufficiency of the allegations were they to be asserted against the appropriate individuals, the SAC clearly fails to state a claim for false imprisonment or excessive force under Section 1983 against Carbone, Zenderman, and Santora.

As to Defendant WCC itself, the County "may not be held liable in a [Section] 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior*. In order to establish the liability of such defendant[] in an action under [Section] 1983 for unconstitutional acts by such employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991) (citing, among other cases, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)) (internal citations omitted). As Plaintiff has pleaded no facts tending to support the existence of a WCC custom or policy of unlawfully confining its students or having its security guards physically assault its students, the SAC fails to state a claim against WCC in this regard. Furthermore, WCC is not responsible for the actions of state troopers who are not under its control.

## C. Claim V: Discrimination

Plaintiff's final claim alleges that Defendant Carbone discriminated against him by refusing to assist him in filling out the benefits application. (*See* SAC at 8.) Even construing this claim broadly, the allegations of discrimination are entirely conclusory and unsupported by any facts which would render those allegations plausible. The complaint states that Plaintiff is "a minority" and "feel[s] as [if] it was a racial issue," (*id.* at 4), and later states that he has "a disability" (apparently a learning disability) and "felt discriminated" against, (*id.* at 5). Such allegations do not suffice to state a plausible claim. *See, e.g.*, *Bickerstaff v. Vassar Coll.*, 196

F.3d 435, 456 (2d Cir. 1999) ("[Plaintiff's] feelings and perceptions of being discriminated against are not evidence of discrimination.") (internal quotation marks and alterations omitted). Even assuming that Plaintiff has adequately pleaded that he has a disability as that term is defined under the various federal discrimination laws – a proposition of which I am skeptical – the SAC includes no facts tending to indicate that any of the conduct of which Plaintiff complains was motivated by Plaintiff's race or disability. Regardless of whether I construe the SAC as alleging causes of action for discrimination under Section 1983, the Civil Rights Act, the Americans with Disabilities Act, the Individuals with Disabilities Education Act, or the Rehabilitation Act, any cause of action based on discrimination requires some factual allegations rendering plausible the conclusion that Defendants' conduct was motivated by Plaintiff's membership in a protected class. *See, e.g.*, *Forde v. Empire State Coll.*, No. 10-CV-9446, 2011 WL 4376499, at *3 (S.D.N.Y. Sept. 19, 2011) ("That type of reasoning – (1) I am a member of a protected class; (2) something bad happened to me at school; (3) therefore, I was discriminated against based upon my status as a member of a protected class – is more than [just] a legal conclusion which this Court is not required to credit:  it is a logically-flawed statement."). Because there are no facts to render plausible Plaintiff's allegations that Defendants' conduct was discriminatory, whether based on race or disability, Plaintiff's discrimination claim must be dismissed.

### D. State Law Claims

The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that

the SAC fails to state any federal law claims on which relief can be granted, I decline to exercise supplemental jurisdiction over any state law causes of action raised in the SAC.  *See id.* (citing 28 U.S.C. § 1367(c)(3)).  I therefore need not reach Defendants' arguments regarding whether Plaintiff has complied with the Notice of Claim requirements set forth in the New York General Municipal Law.

### E.  Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "A *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Grullon*, 720 F.3d at 139 (internal quotation marks and alterations omitted).  "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In this case, Plaintiff has twice been directed by this Court to amend his complaint in a manner that clearly sets out the facts alleged and claims asserted.  (See Order to Amend dated June 13, 2013, (Doc. 5); Minute Entry dated Nov. 22, 2013.)  Plaintiff's failure to fix the deficiencies in his previous pleadings, after being provided notice of those deficiencies (via Judge Preska's order, Defendants' pre-motion letter, and the discussion at the pre-motion conference), is sufficient ground to deny leave to amend *sua sponte*.  *See In re Eaton Vance Mut.*

*Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007); *see also Ruotolo*, 514 F.3d at 191 (affirming denial of leave to amend "given the previous opportunities to amend").  Plaintiff has not suggested that he is in possession of facts that would cure the pleading deficiencies identified herein, and I have no reason to believe that granting further leave to amend – in other words, allowing Plaintiff a fourth attempt at a sufficient complaint – would be anything but futile.  Accordingly, I decline to grant Plaintiff leave to amend *sua sponte*.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED.  The Second Amended Complaint is DISMISSED with prejudice as to the federal law claims and without prejudice as to the state law claims.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Doc. 21), and close the case.

**SO ORDERED.**

Dated: June 25, 2014
       White Plains, New York

                                                    _____
                                                    CATHY SEIBEL, U.S.D.J.